

**SIGNED this 20 day of February, 2009.**

                                                                               /s/ Marcia Phillips Parsons
                                        **Marcia Phillips Parsons**
                                      **UNITED STATES BANKRUPTCY JUDGE**

_____

**[This opinion is not intended for publication as the precedential effect is deemed limited.]**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| In re<br><br>    TRACY C. BURTON and<br>    CYNTHIA JEAN BURTON,<br><br>                    Debtors. | No. 08-50104<br>Chapter 7 |
| AVIVA LIFE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>vs.<br><br>TRACY C. BURTON,<br><br>    Defendant. | Adv. Pro. No. 08-5065 |

**M E M O R A N D U M**

Appearances:

        Mark L. Esposito, Esq.                    Edward T. Brading, Esq.
        Penn, Stuart & Eskridge, P.C.           Herndon, Coleman, Brading & McKee
        804 Anderson Street                     Post Office Box 1160
        Bristol, Tennessee 37620               Johnson City, Tennessee 37605
        *Attorney for Aviva Life Insurance Co.*     *Attorney for Tracy C. Burton*

**Marcia Phillips Parsons, United States Bankruptcy Judge.** In this action, Aviva Life Insurance Company seeks a determination that its contingent indemnity claim against debtor Tracy Burton is nondischargeable under 11 U.S.C. § 523(a)(2)(A) and (6). Presently before the court is the Burton's motion for judgment on the pleadings, based on the assertion that a common law right of indemnity does not constitute fraud or willful and malicious injury. For the reasons set forth hereafter, the motion will be denied. This is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

I.

On January 23, 2008, Tracy Burton and his wife Cynthia Jean Burton filed a voluntary petition seeking bankruptcy relief under chapter 7. Pursuant to Federal Rule of Bankruptcy Procedure 4007(c), the deadline for filing a complaint to determine dischargeability of a debt under § 523(c) was set for April 28, 2008. Upon Aviva's request, this deadline was extended to October 1, 2008, the date Aviva commenced the present adversary proceeding against Burton.

According to Aviva's complaint, Burton was formerly an independent contractor authorized by Aviva to sell Aviva life insurance and annuity products in Tennessee. Burton operated his business under the name Preferred Insurance of East TN, LLC ("Preferred Insurance") in Kingsport, Tennessee. On the same day that the Burtons commenced their personal bankruptcy case, Preferred Insurance filed for bankruptcy relief under chapter 11. In connection with that case, GreenBank initiated an adversary proceeding against Burton, Preferred Insurance, Aviva and others based on loans that GreenBank had made to Burton and others that were secured by assignments of Aviva life insurance policies, but were then in default. GreenBank alleged in that action that Burton, in his capacity as an agent of Aviva, misrepresented the surrender value of those policies to GreenBank, that GreenBank relied upon Burton's misrepresentations in making the loans, and that Aviva was liable for Burton's misrepresentations. In the present action, Aviva contends that if it is held liable to GreenBank based on the conduct of Burton, Aviva will then have an implied right of indemnity against Burton in the amount of Aviva's liability to GreenBank, which contingent indemnity claim is nondischargeable under § 523(a)(2)(A) and (6).

On December 9, 2008, Burton filed a motion for judgment on the pleadings that is presently before the court. Burton contends that Aviva's indemnity right, even if established, is not the type

2

of debt that may be excepted from discharge under § 523(a)(2)(A) or (6). Burton notes that these Code provisions respectively except from discharge debts arising from fraud and willful and malicious injury, while any obligation that he may have to Aviva is based on the common law *respondeat superior* doctrine. In support of this argument, Burton cites § 523(c)(1), which states that a debt of a kind described in § 523(a)(2) or (6) is discharged unless "on request of the creditor to whom such debt is owed," the court determines "such debt" to be nondischargeable. Burton argues that this language limits standing to bring a nondischargeability action under § 523(a)(2) or (6) to the creditor that is the direct victim of the fraud or willful or malicious injury, i.e., GreenBank, rather than Aviva.

In response, Aviva asserts that even if Burton's interpretation of § 523(c)(1) is correct, his argument fails because upon payment of GreenBank's claim, Aviva would be subrogated to all rights of GreenBank, including nondischargeability pursuant to 11 U.S.C. § 509(a) and the common law doctrine of equitable subrogation. Burton counters in reply that Aviva failed to allege subrogation in its complaint, that no right of subrogation has yet accrued because Aviva has not paid GreenBank, and that even upon payment to GreenBank, Aviva would only succeed to the rights of GreenBank. Since GreenBank did not file a nondischargeability complaint prior to the April 28, 2008 deadline, Burton argues that GreenBank, and consequently Aviva, would be precluded from asserting a nondischargeability complaint against Burton. Accordingly, Burton requests that judgment be granted in his favor.

II.

As in all cases of statutory interpretation, the starting point must be the statutory language itself. *United States v. Ron Pair Enterprises*, 489 U.S. 235, 241, 109 S. Ct. 1026 (1989). "The strong presumption is that Congress expresses its intent through the language it chooses." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 433 n.12, 107 S. Ct. 1207 (1987). Section 523 (a)(2)(A) of the Bankruptcy Code excepts from discharge "any debt . . . for money, property, services or an extension, renewal or refinancing of credit to the extent obtained by false pretenses, a false representation, or actual fraud." Section 523(a)(6) further excepts from discharge "any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." Neither of these provisions

3

specifically addresses the holder of the debt or whether the nondischargeability of debt is limited to the direct victim of the fraud or of the willful and malicious injury. Granted, § 523(c) does state, as pointed out by Burton, that a debt of the kind specified in paragraph (2), (4), or (6) of § 523(a) is discharged unless "such creditor" timely requests a dischargeability determination. However, "creditor" merely means an entity that has a prepetition claim against the debtor, *see* 11 U.S.C. § 101(10)(A), and "claim" means "right to payment, whether or not such right is . . . fixed, contingent, matured [or] unmatured . . . ." As the instant case establishes, an entity may hold a contingent right of payment which has the debtor's fraud or malice at its genesis, yet not be the direct victim of that conduct.

Nonetheless, at least one court is in agreement with Burton's argument that nondischargeability under § 523(a)(2)(A) and (6) is limited to a debt held by the claimant who was the direct or immediate target of the debtor's fraudulent intent or malicious conduct. In *Century 21 Balfour Real Estate v. Menna (In re Menna)*, 16 F.3d 7 (1st Cir. 1994), the court dismissed the complaint of a real estate broker that sought to except from discharge the indemnification claim that he had against the debtor, arising out of the debtor's fraudulent misrepresentations to the purchasers for which the broker was held liable. Citing the required showing under § 523(a)(2) that the debtor knowingly or recklessly made a material misrepresentation with the intent to deceive the creditor, the court noted that the complaint failed to allege that the debtor intended to defraud the *broker*. And, stated the court, even assuming *arguendo* that an equitable indemnitee's vicarious injury could satisfy this fraud element, the broker's fraud claim was defeated by its inability to establish that it relied on the debtor's misrepresentations. *Id.* at 10-11.

This court believes that the better reading of § 523(a)'s dischargeability subsections is that undertaken by the bankruptcy court in *Micon Wayside Bar & Grille v. Delia (In re Delia)*, 353 B.R. 532 (Bankr. W.D. Mich. 2006), in construing § 523(a)(9)'s exception for drunk driving debts. In that case, after drinking at the Wayside Bar, the debtor caused an automobile accident, seriously injuring two people. The injured parties sued and obtained a judgment in Michigan state court against the Wayside Bar, which then recovered a judgment against the debtor pursuant to Michigan Complied Laws § 436.1801(6), which grants a full right of indemnification from the intoxicated person of all damages awarded against a licensee. Upon the debtor's bankruptcy filing, Wayside Bar sought to

hold its judgment nondischargeable under § 523(a)(9). The debtor moved for summary judgment on the basis that Wayside Bar's claim against him arose out of a statutory right of indemnification rather than a claim for death or personal injury caused by his operation of a motor vehicle. The court denied the motion, noting that § 523(a)(9) excepts from discharge "*any* debt" for death and personal injury caused by the debtor's drunk driving and observing that the statute never refers to "victims" or any other categorization of eligible creditors allowed to assert claims under the provision. *Id*. at 534 (citing *Ky. Farm Bureau Mutual Ins. Co. v. Peppers (In re Peppers)*, 213 B.R. 956 (Bankr. W.D. Ky 1996)). The court also cited the causation factor, stating that "had the Debtor not been drinking and driving, and the victims not been injured, then there would be no liability imposed upon the Plaintiff by the Dram Shop Act and no indemnification judgment granted the Plaintiff." *Id*. Lastly, the court pointed out that excepting the debt from discharge would be consistent with Congress' purpose in enacting the exception which is to "prevent drunk drivers from escaping financial obligations to their victims by filing bankruptcy." *Id.* (quoting *Simons v. Hart (In re Hart)*, 347 B.R. 635 (Bankr. W.D. Mich.)).

Similarly, the district court in *Mich. Assigned Claims Facility v. Fleski (In re Felski)*, 277 B.R. 732 (E.D. Mich. 2002), rejected the argument that the plaintiff's complaint under § 523(a)(9) should be rejected because its debt arose from a state statutory indemnification scheme rather than from personal injury caused by an intoxicated driver. The plaintiff in *Felski* was the insurer who had paid benefits to the victims of the debtor-driver's motor vehicle accident. Under Michigan law, the insurer was entitled to seek reimbursement for those payments from the driver. When the driver filed for bankruptcy relief and the insurer sought a determination that its indemnification claim was nondischargeable under § 523(a)(9), the bankruptcy court dismissed the action based on its conclusion that the insurer's claim did not fall within the statute. The district court reversed, stating that the bankruptcy court's holding "ignore[d] the origin of the claim," economic loss arising from personal injuries caused by an intoxicated driver. *Id.* at 737. Although there was some disagreement in the case as to whether the plaintiff was proceeding pursuant to a right of indemnification or subrogation, the district court concluded that this issue was irrelevant because "absent the personal injury, there would have been no debt to find its way back to the debtor as a matter of law." *Id.* at 738. And, as in the *Delia* decision, the district court observed that "nothing in the congressional

record suggests that Congress intended to limit application of § 523(a)(9) solely to civil tort judgments" and reasoned that its holding was consistent with Congressional intent in adopting the discharge exception. *Id.* at 738 (quoting *Lugo v. Paulsen*, 886 F.2d 602, 610 (3d Cir. 1989)).

Applying the lessons from these cases to the case at hand, it must first be noted that, like § 523(a)(9), both § 523(a)(2) and (6) refer to "any debt." In construing § 523(a)(2)(A), the Supreme Court observed that "[o]nce it is established that specific money or property has been obtained by fraud, . . . 'any debt' arising therefrom is excepted from discharge." *Cohen v. de la Cruz*, 523 U.S. 213, 218, 118 S. Ct. 1212 (1998). The Court noted that the words "debt for" in § 523(a)(2)(A), (4), (6), (9), and other subsections of § 523(a) mean "'debt as a result of,' 'debt with respect to,' debt by reason of,' and the like, connoting broadly any liability arising from the specified object." *Id.* at 220 (internal citations omitted). Although the Court's statements in this regard were for the precise purpose of determining whether § 523(a)(2)(A) encompassed punitive damages, its holding that "§ 523(a)(2)(A) is best read to prohibit the discharge of any liability arising from a debtor's fraudulent acquisition of money, property, etc." is equally applicable herein. *Id.* at 221.

In *Cohen*, the Supreme Court also observed that "[t]he Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, embodying a basic policy animating the Code of affording relief only to an 'honest but unfortunate debtor.'" *Cohen*, 523 U.S. at 217 (quoting *Grogan v. Garner*, 498 U.S. 279, 287, 111 S. Ct. 654 (1991)). "The various exceptions to discharge in § 523(a) reflect a conclusion on the part of Congress that 'the creditors' interest in recovering full payment of debts in these categories outweighs the debtors' interest in a complete fresh start.'" *Id.* at 222. As reasoned by one court in the context of a creditor that sought to except its subrogation claim from discharge, "[t]his [Congressional] intent would be easily frustrated if the debtor in this case were simply allowed to avoid the liability by allowing the surety to cover the debt and then discharging the debt to the surety in bankruptcy." *Old Republic Surety Co. v. Richardson (In re Richardson)*, 178 B.R. 19, 23 (Bankr. D.C. 1995). And, as astutely recognized by the late Judge Ralph Kelley of this district: "A debtor's fresh start is not overburdened by excepting a surety's subrogation claim from the discharge. The debtor's fresh start is the same; he owes the same amount of nondischargeable tax debt; the only difference is whether the debtor owes the debt to the government or the surety." *Safeco Ins. Co. of Am. v. Norris (In re Norris)*, 107 B.R.

592, 596 (Bankr. E.D. Tenn. 1989).

Unlike the court in *Menna*, this court is not concerned by the fact that Aviva will be unable to establish that it relied upon any misrepresentations by Burton. As long as the evidence establishes that GreenBank relied on the misrepresentations, and that the other elements of fraud are present as between Burton and GreenBank, then Avia's nondischargeability claim, premised on its vicarious liability,[1] may proceed. In *BancBoston Mortgage Corp. v. Ledford (In re Ledford)*, 970 F.2d. 1556, 1561 (6th Cir. 1992), the Sixth Circuit Court of Appeals held that for purposes of § 523(a)(2)(A), the fraud of a partner can be imputed to another partner, even though the second partner had no culpability, or even knowledge, of the first partner's fraud. Implicit in this ruling is the conclusion that it is not essential for a fraud dischargeability action that the debtor personally make misrepresentations, as long as the debtor is liable for the misrepresentations and resulting fraud under state law. By analogy to the present case, it is not imperative that Aviva relied upon Burton's misrepresentations, so long as the debt held by Aviva against Burton arises out of Burton's fraud.

### III.

Before concluding, this court must address the argument that even if Aviva's contingent right of indemnity is insufficient to support its nondischargeability claim for fraud or malice, Aviva would be subrogated to the rights of GreenBank in the event it pays any judgment obtained against it by GreenBank. *See Commonwealth Land Title Ins. Co. v. Wolfington (In re Wolfington)*, 47 B.R. 225, 228 (Bankr. M.D. Tenn. 1985) ("[W]here one secondarily liable is called upon to make good on an obligation and he pays the debt, he steps into the shoes of the former creditor."). Burton contends that this argument is irrelevant because Aviva has not yet paid GreenBank and Aviva did not raise subrogation in its complaint. Alternatively, Burton contends that Aviva's claim of subrogation fails to save its dischargeability complaint since Aviva would only succeed to any nondischargeability rights held by GreenBank and GreenBank has no such rights because it has not filed a nondischargeability complaint against Burton.

---

[1] *See Wharton Transp. Corp. v. Bridges*, 606 S.W.2d 521, 529 (Tenn. 1980) (Under Tennessee law, a principal who is not a wrongdoer, but because of the doctrine of vicarious liability has been compelled to pay damages to a third party, has an implied right of indemnification.).

7

This court is in agreement with the *Felski* court that whether Aviva's complaint against Burton is based on its own right of indemnification or on the rights of GreenBank to which it is subrogated is irrelevant at this point. Under either theory, Aviva's claim is only contingent presently since it has neither been held liable to GreenBank, nor paid any monies to GreenBank, thereby succeeding to its rights against Burton.[2] And, even upon payment to GreenBank, Aviva is not limited to asserting its subrogation rights under section § 509, but may alternatively choose to pursue its personal rights for indemnity under section § 502 of the Bankruptcy Code. *See Capitol Ind., Inc. v. Regal Cinemas, Inc. (In re Regal Cinemas, Inc.)*, 393 F.3d 647, 650 (6th Cir. 2004) (claims for reimbursement under § 502 include indemnity claims); 4 *Collier on Bankruptcy* ¶ 509.02[3] (15th ed. rev. 2008) ("If the codebtor has paid the original claimant, the codebtor has a choice of whether to proceed as a claimant under section 502(e)(2) or to seek a right of subrogation under section 509."). Under Burton's argument, however, even if Aviva had asserted its contingent subrogation claim in its complaint, the complaint must be dismissed because GreenBank itself did not file a dischargeability complaint.

This court rejects that absurd and patently inequitable result. Application of Burton's theory would effectively preclude Aviva challenging the nondischargeability of Burton's fraud obligation because Aviva would have no control over whether GreenBank chose to commence a nondischargeability action against Burton. And, this construction would serve to immunize Burton from his fraudulent behavior by nullifying the fraud discharge exceptions in his case, merely because he is fortunate enough to have another party liable under state law for his alleged misconduct. As stated by the Supreme Court in *Cohen*, "it is unlikely that Congress would have favored the interest in giving perpetrators of fraud a fresh start over the interest in protecting victims of fraud." *Cohen*, 523 U.S. at 223. Not only would such a holding frustrate congressional intent, as previously reported,

---

[2] Aviva had a contingent subrogation claim against Burton, as of the bankruptcy filing, notwithstanding the fact that it has made no payment to GreenBank. *See Russell v. Jones (In re Pro Page Partners, LLC)*, 292 B.R. 622, 633 (Bankr. E.D. Tenn. 2003) (A right of subrogation constitutes a right to payment which is a claim under § 101(5) of the Bankruptcy Code even though the claim is unmatured, unliquidated, and contingent until payment of the obligation in full); *In re Weinhold*, 393 B.R. 623, 629 (Bankr. E.D. Wis. 2008) (quoting S. Rep. No. 95-989 at 22 (1978)) ("The Bankruptcy Code 'contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case.").

but there is also the danger that it could even *encourage* fraudulent conduct. As stated by the court in *Baxter v. Flick (In re Flick)*, 75 B.R. 204 (Bankr. S.D. Cal. 1987), in addressing the right of a partner to hold its subrogation claim nondischargeable:

> In the future, a dishonest partner will know that all he has to do to protect himself from the financial consequence of his wrongdoing is to find a financial sound but honest partner. If the wrongdoing is discovered, the honest partner will pay the debt to the creditor. The debt will be discharged as to the creditors and, since the honest partner does not have subrogation rights, the dishonest partner will be effectively discharged from the consequences of his own misbehavior.

*Id.* at 207 (Bankr. S.D. Cal. 1987)

It is generally well-settled that the subrogee may assert the creditor's right to bring a nondischargeability action. *See, e.g., In re Richardson*, 178 B.R. at 23 ("If there had been no embezzlement or misappropriation, there would have been no loss to the surety and no occasion for indemnity."); *In re Norris*, 107 B.R. at 596 ("The court will follow the majority rule that a surety's subrogation to the government's tax claim includes the right to have the debt excepted from discharge."); *In re Flick,* 75 B.R. at 207 ("It would be inequitable to require an honest partner to pay partnership obligations created by the wrongdoing of a dishonest partner without giving the honest partner a right of subrogation as to the debt paid and also as to its non-dischargeable character."); *Fireman's Fund Ins. Co. v. Covino (In re Covino)*, 12 B.R. 876, (Bankr. M.D. Fla. 1981) ("The dischargeability of this debt, which unquestionably initially arose as a result of the debtor's embezzlement, should not depend on whether the employer had the foresight to purchase insurance."); *In re Gibbs*, 11 B.R. 320, 322 (Bankr. W.D. Mo. 1981) ("[T]he surety is subrogated to the rights of the creditor whose claim it pays and . . . the surety's right to reimbursement is of the same character as the creditor's claim."). Regardless of whether Aviva is proceeding under a contingent right of subrogation or a contingent indemnification right, the result is the same: its complaint sets forth a cause of action against Burton.

IV.

In considering a motion for judgment on the pleadings, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). "A motion brought pursuant to Rule 12(c) is appropriately granted 'when no

material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Id.* Because Burton is not entitled to a judgment as a matter of law, the court will enter an order contemporaneously with the filing of this memorandum opinion denying Burton's motion for judgment on the pleadings.

# # #